# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

ASR

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

**BUYER(S):** Sam Stoller & Katti Stoller

**SELLER(S):** Natalie Cardiello, Trustee

**BUYER'S MAILING ADDRESS:**
8466 Coventry Dr. Allison Park, PA 15101

**SELLER'S MAILING ADDRESS:**
107 Huron Drive Carnegie, PA 15106

## PROPERTY

ADDRESS (including postal city) 8193 Brittany Place, Pittsburgh, PA 15237

ZIP 15237

in the municipality of McCandless, County of Allegheny

in the School District of North Allegheny, in the Commonwealth of Pennsylvania.

Tax ID #(s): 613-D-00231 and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): _____

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Buyer is not represented by a broker)

Broker (Company) Coldwell Banker Real Estate

Company License # RB066636
Company Address 9600 Perry Hwy, Pittsburgh, PA 15237-5552
Company Phone (412) 366-1600
Company Fax (412) 366-8311

Licensee(s) (Name) Rick Sarazen Emily Murphy

State License # RS312582
Direct Phone(s) (412) 779-2121
Cell Phone(s) (412) 779-2121
Fax (412) 366-8311
Email emilymurphy2010@gmail.com

Broker is (check only one):
☐ Buyer Agent (Broker represents Buyer only)
☒ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) is (check only one):
☐ Buyer Agent (all company licensees represent Buyer)
☐ Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)
☒ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ No Business Relationship (Seller is not represented by a broker)

Broker (Company) Coldwell Banker Real Estate

Company License # RB066636
Company Address 9600 Perry Highway, Pittsburgh, PA 15237
Company Phone (412) 366-1600
Company Fax _____

Licensee(s) (Name) Donna Fischer

State License # RS214640L
Direct Phone(s) (412) 559-4464
Cell Phone(s) (412) 559-4464
Fax (412) 235-1894
Email DonnaRFischer@aol.com

Broker is (check only one):
☐ Seller Agent (Broker represents Seller only)
☒ Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) is (check only one):
☐ Seller Agent (all company licensees represent Seller)
☐ Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)
☒ Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: S / K    ASR Page 1 of 13    Seller Initials: ___ / ___
Revised 2/16

Pennsylvania Association of Realtors®    COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2016
2/16

Coldwell Banker Real Estate Services - North Hills, 9600 Perry Hwy, Ste 100 Pittsburgh, PA 15237    Phone: (412)366-1600    Fax: (412)366-8311    8193 Brittany Place
Emily Murphy    Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026    www.zipLogix.com

1. **By this Agreement**, dated December 25, 2016 ,
   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.
2. **PURCHASE PRICE AND DEPOSITS (4-14)**
   (A) Purchase Price $ $353,500.00
       ( Three Hundred Fifty-Three Thousand, Five Hundred
       U.S. Dollars), to be paid by Buyer as follows:
       1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
          if not included with this Agreement:                                  $         5,000.00
       2. Additional Deposit within _____ days of the Execution Date:           $
       3. _____                 $
       Remaining balance will be paid at settlement.
   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.
   (C) Deposits, regardless of the form of payment and the person designated as payee, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: Natalie Cardiello, Trustee                                                               ),
       who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.
3. **SELLER ASSIST (If Applicable) (1-10)**
   Seller will pay $ _____ or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.
4. **SETTLEMENT AND POSSESSION (4-14)**
   (A) Settlement Date is February 17, 2017 , or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here:
   _____
   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
       1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
       2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: Special Warranty Deed
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease, possession is to be delivered by deed, existing keys and assignment of existing leases for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases, nor extend existing leases, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) by initialing the lease(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
       ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.
5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before: December 29th 2016
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. All changes to this Agreement should be initialed and dated.
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

Buyer Initials: SS / BS          ASR Page 2 of 13          Seller Initials: ___ / ___

6. **ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property (and each parcel thereof, if subdividable) is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

Zoning Classification, as set forth in the local zoning ordinance: _____

7. **FIXTURES AND PERSONAL PROPERTY (4-14)**

   (A) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; radiator covers; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; television antennas; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; built-in air conditioners; built-in appliances; the range/oven; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, water treatment systems, propane tanks, satellite dishes and security systems. Also included: _____

   (B) The following items are LEASED (not owned by Seller). Contact the provider/vendor for more information (e.g., water treatment systems, propane tanks, satellite dishes and security systems): _____

   (C) EXCLUDED fixtures and items: _____

8. **MORTGAGE CONTINGENCY (4-14)**

   ☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency.

   ☒ ELECTED.

   (A) This sale is contingent upon Buyer obtaining mortgage financing according to the following terms:

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ **281,200.00** | Loan Amount $ _____ |
| Minimum Term **30** years | Minimum Term _____ years |
| Type of mortgage **Conventional** | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender **First COmmonwealth Bank** | Mortgage lender _____ |
| Interest rate **3.500** %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of **4.250** %. | Interest rate _____ %; however, Buyer agrees to accept the interest rate as may be committed by the mortgage lender, not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

   (B) Mortgage Commitment Date **February 10, 2017**
   Upon receiving a mortgage commitment(s), Buyer will promptly deliver a copy of the commitment(s) to Seller.

   (C) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the property.

   (D) The interest rate(s) and fee(s) provisions in Paragraph 8(A) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. If lender(s) gives Buyer the right to lock in the interest rate(s), Buyer will do so at least **15** days before Settlement Date. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to the Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.

   (E) Within **5** days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(A), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

   (F) Buyer will be in default of this Agreement if Buyer furnishes false information to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated in Paragraph 8(D), or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan commitment.

Buyer Initials: ___/___   ASR Page 3 of 13   Seller Initials: ___/___

127 (G) 1. If Seller does not receive a copy of the mortgage commitment(s) by the Mortgage Commitment Date, Seller may terminate this
128 Agreement by written notice to Buyer. Seller's right to terminate continues until Buyer delivers a mortgage commitment to
129 Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to
130 obtain mortgage financing.
131 2. Seller may terminate this Agreement by written notice to Buyer after the Mortgage Commitment Date if the mortgage commitment:
132 a. Does not satisfy the terms of Paragraph 8(A), OR
133 b. Contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be
134 received by the lender, or the mortgage commitment is not valid through the Settlement Date) that is not satisfied and/or
135 removed in writing by the mortgage lender(s) within _____7_____ DAYS after the Mortgage Commitment Date in Paragraph 8(B),
136 or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining
137 insurance, confirming employment).
138 3. If this Agreement is terminated pursuant to Paragraphs 8(G)(1) or (2), or the mortgage loan(s) is not obtained for settlement,
139 all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer
140 will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of
141 this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any
142 fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancel-
143 lation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).
144 (H) If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires
145 repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within _____5_____
146 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's
147 expense.
148 1. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and
149 agrees to the RELEASE in Paragraph 28 of this Agreement.
150 2. If Seller will not make the required repairs, or if Seller fails to respond within the stated time, Buyer will, within _____5_____
151 DAYS, notify Seller of Buyer's choice to:
152 a. Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which
153 will not be unreasonably withheld, OR
154 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
155 Paragraph 26 of this Agreement.
156 If Buyer fails to respond within the time stated in Paragraph 8(H)(2) or fails to terminate this Agreement by written notice to
157 Seller within that time, Buyer will accept the Property, make the required repairs/improvements at Buyer's expense and agree
158 to the RELEASE in Paragraph 28 of this Agreement.

159 **FHA/VA, IF APPLICABLE**
160 (I) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the pur-
161 chase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer
162 has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner,
163 Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than
164 $ _____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of
165 proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation
166 is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does
167 not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the
168 Property are acceptable.
169 Warning: Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing
170 Administration Transactions, provides, "Whoever for the purpose of . . . influencing in any way the action of such Department,
171 makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not
172 more than two years, or both."
173 (J) U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement
174 ☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of
175 getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that
176 FHA will not perform a home inspection nor guarantee the price or condition of the Property.
177 (K) Certification We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract
178 for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties
179 in connection with this transaction is attached to this Agreement.

180 **9. CHANGE IN BUYER'S FINANCIAL STATUS (4-14)**
181 In the event of a change in Buyer's financial status affecting Buyer's ability to purchase, Buyer shall promptly notify Seller and
182 lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not lim-
183 ited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer's having incurred a new financial obligation;
184 entry of a judgment against Buyer. Buyer understands that applying for and/or incurring an additional financial obligation may
185 affect Buyer's ability to purchase.
186 **10. SELLER REPRESENTATIONS (4-14)**
187 (A) Status of Water
188 Seller represents that the Property is served by:
189 ☒ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None  ☐ _____

190 Buyer Initials: _SS_ / _bu_    ASR Page 4 of 13    Seller Initials: _N_ / _____

191  (B) **Status of Sewer**
192      1. Seller represents that the Property is served by:
193         ☒ Public Sewer         ☐ Community Sewage Disposal System   ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
194         ☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)   ☐ Holding Tank (see Sewage Notice 3)
195         ☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 1; see Sewage Notice 4, if applicable)
196         ☐ None (see Sewage Notice 1)    ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)
197         ☐ _____
198      2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
199         **Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the
200         Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction,
201         alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtain-
202         ing a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency
203         charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual
204         sewage system. The local agency charged with administering the Act will be the municipality where the Property is located
205         or that municipality working cooperatively with others.
206         **Notice 2:** This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions
207         of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing,
208         constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre
209         parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conduct-
210         ed and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a mal-
211         function may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
212         **Notice 3:** This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a
213         water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another
214         site. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the
215         tank from the date of its installation or December 14, 1995, whichever is later.
216         **Notice 4:** An individual sewage system has been installed at an isolation distance from a well that is less than the dis-
217         tance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances
218         provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water
219         supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the hori-
220         zontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the
221         absorption area shall be 100 feet.
222         **Notice 5:** This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facili-
223         ties are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality
224         completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.
225  (C) **Historic Preservation**
226      Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
227  _____
228  (D) **Land Use Restrictions**
229      1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the
230         following Act(s) (see Notices Regarding Land Use Restrictions below):
231         ☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
232         ☐ Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)
233         ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
234         ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)
235         ☐ Other _____
236      2. **Notices Regarding Land Use Restrictions**
237         a. **Pennsylvania Right-To-Farm Act:** The property you are buying maybe located in an area where agricultural operations
238         take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law lim-
239         its circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
240         b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-
241         ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution
242         of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that
243         may result in the future as a result of any change in use of the Property or the land from which it is being separated.
244         c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water
245         supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as
246         open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of
247         time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless
248         specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that
249         will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change
250         in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

251 Buyer Initials: S / B        ASR Page 5 of 13        Seller Initials: ____ / ____

    d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**

Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**

1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

(G) **Highway Occupancy Permit**

Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

## 11. WAIVER OF CONTINGENCIES (9-05)

If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.

## 12. BUYER'S DUE DILIGENCE/INSPECTIONS (4-14)

(A) **Rights and Responsibilities**

1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors. All parties and their real estate licensee(s) may attend any inspections.
2. Buyer may make two pre-settlement walk-through inspections of the Property. Buyer's right to these inspections is not waived by any other provision of this Agreement.
3. Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.
4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

(C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13 (A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13 (B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

Elected _____ / _____ Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections) Waived SS / ɪ

**Wood Infestation**

Elected _____ / _____ Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be Waived SS / ɪ

Buyer Initials: SS / ɪ      ASR Page 6 of 13      Seller Initials: _____ / _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

8193 Brittany Place

315 limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
316 reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pes-
317 ticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
318 may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
319 structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.
320 **Deeds, Restrictions and Zoning**
321 Elected — Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi- — Waived
322 ___/___ nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the ___/___
323 Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is
324 permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: _____
325
326 **Water Service**
327 Elected — Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or other- — Waived
328 ___/___ wise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's ___/___
329 expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property
330 to its previous condition, at Seller's expense, prior to settlement.
331 **Radon**
332 Elected — Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection — Waived
333 ___/___ Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 _S_/_B_
334 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by
335 the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can
336 increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house
337 has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any per-
338 son who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of
339 Environmental Protection. Information about radon and about certified testing or mitigation firms is available
340 through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
341 Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov
342 **On-lot Sewage (If Applicable)**
343 Elected — Buyer may obtain an Inspection of the individual on-lot sewage disposal system from a qualified, professional — Waived
344 ___/___ inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, ___/___
345 and empty the individual on-lot sewage disposal system. Seller will restore the Property to its previous condition,
346 at Seller's expense, prior to settlement. See paragraph 13(C) for more information regarding the Individual On-lot
347 Sewage Inspection Contingency.
348 **Property and Flood Insurance**
349 Elected — Buyer may determine the insurability of the Property by making application for property and casualty insurance for — Waived
350 ___/___ the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with ___/___
351 insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may
352 be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to
353 Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance
354 premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insur-
355 ance agents regarding the need for flood insurance and possible premium increases.
356 **Property Boundaries**
357 Elected — Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal — Waived
358 ___/___ description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property _S_/_B_
359 surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
360 or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
361 tations of size of property are approximations only and may be inaccurate.
362 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
363 Elected — Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct a — Waived
364 ___/___ risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint haz- ___/___
365 ards. Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard
366 Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved
367 lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a sep-
368 arate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any
369 lead-based paint records regarding the Property.
370 **Other**
371 Elected — _____ — Waived
372 ___/___ _____ ___/___
373
374 The Inspections elected above do not apply to the following existing conditions and/or items: _____
375
376
377 (D) **Notices Regarding Property & Environmental Inspections**
378 1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
379 the surface of a structure where it may cause mold and damage to the building's frame.

380 Buyer Initials: _S_/_B_         ASR Page 7 of 13         Seller Initials: __/__

381    2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
382    3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and dispos-
383       al of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
384       sibility to dispose of them properly.
385    4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
386       to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
387       the property would be affected or denied because of its location in a wetlands area.
388    5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
389       pollen and viruses) have been associated with allergic responses.
390    6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
391       directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
392       20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
393       Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
394       and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
395       calling 1-877-724-3258.
396 **13. INSPECTION CONTINGENCY (4-14)**
397    (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elect-
398        ed in Paragraph 12(C).
399    (B) Except as stated in Paragraph 13(C), if the result of any Inspection elected in Paragraph 12(C) is unsatisfactory to Buyer, Buyer
400        will, within the stated Contingency Period:
401        1. Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
402        2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
403           Paragraph 26 of this Agreement, OR
404        3. Present the Report(s) to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.
405           The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the cor-
406           rections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the correc-
407           tions. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental
408           requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
409           a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
410              Period.
411              (1) During the Negotiation Period, Seller will either agree to satisfy all the terms of Buyer's Proposal or negotiate, by writ-
412                  ten or verbal communication, another mutually acceptable written agreement, providing for any repairs or improvements
413                  to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
414              (2) If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable
415                  written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
416                  Negotiation Period ends.
417           b. If no mutually acceptable written agreement is reached, or if Seller fails to respond, during the Negotiation Period, with-
418              in _____ days (2 if not specified) following the end of the Negotiation Period, Buyer will:
419              (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
420                  Agreement, OR
421              (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
422                  of Paragraph 26 of this Agreement.
423           If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this
424           Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property
425           and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the
426           Negotiation Period.
427    (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
428        days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the
429        name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected com-
430        pletion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or if no Proposal is provided within the
431        stated time, Buyer will notify Seller in writing of Buyer's choice to:
432        1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
433        2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
434           Paragraph 26 of this Agreement, OR
435        3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any
436           mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required
437           by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given
438           by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer
439           may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned
440           to Buyer according to the terms of Paragraph 26 of this Agreement.
441        If Buyer fails to respond within the time stated in Paragraph 13(C) or fails to terminate this Agreement by written notice to
442        Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

443 Buyer Initials: SS / DC        ASR Page 8 of 13        Seller Initials: ____ / ____

**14. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a property at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of the property and result in a change in property tax.

**15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (4-14)**

(A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
  1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
  2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or fails within the stated time to notify Buyer whether Seller will comply, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:
     a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in Paragraph 28 of this Agreement, OR
     b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

  If Buyer fails to respond within the time stated in Paragraph 15(A)(2) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.

(B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to Seller.
  1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a copy of the notice to Buyer and notify Buyer in writing that Seller will:
     a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
     b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will notify Seller in writing within __5__ DAYS that Buyer will:
        (1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld, OR
        (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

     If Buyer fails to respond within the time stated in Paragraph 15(B)(1)(b) or fails to terminate this Agreement by written notice to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, and Buyer accepts the responsibility to perform the repairs/improvements according to the terms of the notice provided by the municipality.
  2. If Seller denies Buyer permission to make the required repairs/improvements, or does not provide Buyer access before Settlement Date to make the required repairs/improvements, Buyer may, within __5__ DAYS, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
  3. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph, Seller will perform all repairs/improvements as required by the notice at Seller's expense. Paragraph 15(B)(3) will survive settlement.

**16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) RESALE NOTICE (1-10)**

(A) Property is NOT a Condominium or part of a Planned Community unless checked below.
  ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
  ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the declaration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the provisions set forth in Section 5407(a) of the Act.

(B) THE FOLLOWING APPLIES TO PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A PLANNED COMMUNITY:
  1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides that the association is required to provide these documents within 10 days of Seller's request.
  2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the association in the Certificate.
  3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

Buyer Initials: _SS_ / _b_   ASR Page 9 of 13   Seller Initials: ____ / ____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com   8193 Brittany Place

4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender.

## 17. TITLES, SURVEYS AND COSTS (4-14)

(A) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, excepting however the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.

(B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; Buyer should consult with a title insurance agent about Buyer's options. Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.

(C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.

(D) Seller has the right, upon request, to receive a free copy of any title abstract for the Property from the party for whom it was prepared.

(E) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.

(F) In the event of a change in Seller's financial status affecting Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

(G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates, as specified in Paragraph 17(A), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement. Upon termination, Seller will reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those items specified in Paragraph 17(C) items (1), (2), (3) and in Paragraph 17(E).

(H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation about the status of those rights unless indicated elsewhere in this Agreement.

☒ Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.

(I) **COAL NOTICE** (Where Applicable)
THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDERNEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COMPLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsidence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27, 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

(J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____

(K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
☐ Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.
2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101. et. seq.), which defines a Private Transfer Fee as "a fee that is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obligation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed, the Act gives certain rights and protections to buyers.

## 18. MAINTENANCE AND RISK OF LOSS (1-14)

(A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property) specifically listed in this Agreement in its present condition, normal wear and tear excepted.

(B) If any part of the Property included in the sale fails before settlement, Seller will:
1. Repair or replace that part of the Property before settlement, OR
2. Provide prompt written notice to Buyer of Seller's decision to:
   a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender, if any, OR
   b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed part of the Property.

Buyer Initials: SS / DE        ASR Page 10 of 13        Seller Initials: ___ / ___

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

8193 Brittany Place

574  3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, or if Seller
575     fails to notify Buyer of Seller's choice, Buyer will notify Seller in writing within _____5_____ DAYS or before Settlement Date,
576     whichever is earlier, that Buyer will:
577     a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
578     b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
579        Paragraph 26 of this Agreement.
580     If Buyer fails to respond within the time stated in Paragraph 18(B)(3) or fails to terminate this Agreement by written notice
581     to Seller within that time, Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement.
582  (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
583     replaced prior to settlement, Buyer will:
584     1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
585     2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
586        Paragraph 26 of this Agreement.
587 **19. HOME WARRANTIES (1-10)**
588     At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller under-
589     stand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-
590     existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifi-
591     cations that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home
592     warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.
593 **20. RECORDING (9-05)**
594     This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
595     causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
596 **21. ASSIGNMENT (1-10)**
597     This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assigna-
598     ble, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless
599     otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
600 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
601  (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
602     laws of the Commonwealth of Pennsylvania.
603  (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either
604     party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.
605 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (4-14)**
606     The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
607     Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of
608     600 U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons
609     purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are
610     required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
611     taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the
612     transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and
613     you fail to withhold, you may be held liable for the tax.
614 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
615     The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
616     for community notification of the presence of certain convicted sex offenders. Buyers are encouraged to contact the municipal
617     police department or the Pennsylvania State Police for information relating to the presence of sex offenders near a particular prop-
618     erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.
619 **25. REPRESENTATIONS (1-10)**
620  (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their
621     licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this
622     Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations,
623     covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This
624     Agreement will not be altered, amended, changed or modified except in writing executed by the parties.
625  (B) Unless otherwise stated in this Agreement, Buyer has inspected the Property (including fixtures and any personal property
626     specifically listed herein) before signing this Agreement or has waived the right to do so, and agrees to purchase the
627     Property IN ITS PRESENT CONDITION, subject to inspection contingencies elected in this Agreement. Buyer acknowledges
628     that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the
629     structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor
630     of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the sys-
631     tems contained therein.
632  (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
633  (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
634 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (4-14)**
635  (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
636     deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
637     Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
638  (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
639     determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies;
640     1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies, a written
641        agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

642 Buyer Initials: _S_ / _DL_     ASR Page 11 of 13     Seller Initials: _____ / _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com     8193 Brittany Place

2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.
3. According to the terms of a final order of court.
4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

(C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved ___90___ days (180 if not specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the subject of litigation or mediation. If Broker has received verifiable written notice of litigation prior to the receipt of Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation for any portion of the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties maintain their legal rights to pursue litigation even after a distribution is made.

(D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.

(E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
1. Fail to make any additional payments as specified in Paragraph 2, OR
2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning Buyer's legal or financial status, OR
3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.

(F) Unless otherwise checked in Paragraph 26(G), Seller may elect to retain those sums paid by Buyer, including deposit monies:
1. On account of purchase price, OR
2. As monies to be applied to Seller's damages, OR
3. As liquidated damages for such default.

(G) ☒ SELLER IS LIMITED TO RETAINING SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS LIQUIDATED DAMAGES.

(H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer and Seller are released from further liability or obligation and this Agreement is VOID.

(I) Brokers and licensees are not responsible for unpaid deposits.

27. ~~MEDIATION (1-10)~~
~~Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies, to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided equally among the parties and will be paid before the mediation conference. This mediation process must be concluded before any party to the dispute may initiate legal proceedings in any courtroom, with the exception of filing a summons if it is necessary to stop any statute of limitations from expiring. Any agreement reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will survive settlement.~~

28. RELEASE (9-05)
Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or through them, from any and all claims, losses or demands, including, but not limited to, personal injury and property damage and all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects, radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.

29. REAL ESTATE RECOVERY FUND (9-05)
A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-3658 or (800) 822-2113 (within Pennsylvania) and (717) 783-4854 (outside Pennsylvania).

30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)
(A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s) and Closing Disclosure(s) upon receipt.

703  (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
704      satisfied by communication/delivery to the Broker for Buyer, if any, except for documents required to be delivered pursuant to
705      Paragraph 16. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
706      directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or allows
707      communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if any. If
708      there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the Seller,
709      unless otherwise agreed to by the parties.

710 **31. HEADINGS (4-14)**
711   The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter
712   in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

713 **32. SPECIAL CLAUSES (1-10)**
714  (A) The following are attached to and made part of this Agreement if checked:
715      ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
716      ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
717      ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
718      ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
719      ☒ Appraisal Contingency Addendum (PAR Form ACA)
720      ☐ Short Sale Addendum (PAR Form SHS)
721      ☐ _____
722      ☐ _____
723      ☐ _____
724  (B) Additional Terms: Buyer responsible for dye testing required by municipality

731 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

732 This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original and which coun-
733 terparts together shall constitute one and the same Agreement of the Parties.

734 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are
735 advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

736 Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures
737 of all parties, constitutes acceptance by the parties.

738 _SS_ / _Ks_ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

739 _SS_ / _Ks_ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

740 _SS_ / _Ks_ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit
741           money) before signing this Agreement.

742 _SS_ / _Ks_ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer
743           has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

744 BUYER _/s/_   12/29/2016 12:38:17   DATE _____
       Sam Stoller & Katti Stoller

745 BUYER _/s/_   12/29/2016 12:56:02   DATE _____

746 BUYER _____   DATE _____

747 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
748 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

749 SELLER _Natalie Cardiello, Trustee_   DATE 12/30/16
       Natalie Cardiello, Trustee

750 SELLER _____   DATE _____

751 SELLER _____   DATE _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com           8193 Brittany Place

## APPRAISAL CONTINGENCY ADDENDUM TO AGREEMENT OF SALE         ACA

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

1  PROPERTY 8193 Brittany Place, Pittsburgh, PA 15237
2  SELLER Natalie Cardiello, Trustee
3  BUYER Sam Stoller & Katti Stoller

4  1.  The Agreement of Sale is contingent upon the Property being appraised (in a manner that is acceptable to underwriter if Buyer is obtaining
5      financing) and at a value that is equal to or higher than:
6      ☐  $ _____
7      ☒  The Purchase Price

8  2.  Contingency Period: _____7_____ days (30 if not specified) from the Execution Date of the Agreement.
9      Within the Contingency Period, Buyer may obtain an appraisal of the Property from a Pennsylvania certified appraiser. If Buyer is obtaining
10     financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by the lender to whom Buyer has made application
11     for financing. If Buyer is not obtaining financing, the appraisal shall be performed by a Pennsylvania certified appraiser selected by Buyer.
12     (A) If the terms of Paragraph 1 are satisfied, or if the appraisal is not completed within the Contingency Period, Buyer accepts the Property
13         and agrees to the terms of the RELEASE paragraph of the Agreement of Sale.
14     (B) If the terms of Paragraph 1 are not satisfied, Buyer will deliver a copy of the appraisal report to Seller, and Buyer will, within the
15         Contingency Period:
16         1. Terminate the Agreement of Sale by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
17            the Agreement of Sale, OR
18         2. Enter into a mutually acceptable written agreement with Seller.

19 3.  If Buyer does not terminate the Agreement of Sale or enter into a mutually acceptable written agreement with Seller within this Contingency
20     Period, Buyer waives this contingency.

21 All other terms and conditions of the Agreement of Sale remain unchanged and in full force and effect.

22 BUYER _____ 12/28/2016 12:38:41 DATE _____
23 BUYER _____ 12/28/2016 12:44:25 DATE _____
24 BUYER _____ DATE _____
25 SELLER _____ DATE 12/30/16
26 SELLER _____ DATE _____
27 SELLER _____ DATE _____

Pennsylvania Association of Realtors®    COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2015
                                                                                      03/15

Coldwell Banker Real Estate Services - North Hills, 9600 Perry Hwy, Ste 100 Pittsburgh, PA 15237
Phone: (412)366-1600    Fax: (412)366-8311    Emily Murphy                    8193 Brittany Place
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

## "AS IS, WHERE IS"
## ADDENDUM TO
## AGREEMENT OF SALE

SELLER: Natalie Lutz Cardiello, Trustee for the Bankruptcy Estate of _____

_Gregory and Sandy Mencini_

and

BUYER: _Sam Stoller & Katti Stoller_

PROPERTY: _8193 Brittany Pl. Pittsburgh PA, 15237_ ("Property")

THIS ADDENDUM is attached to and made a part of the agreement of sale between the above referenced parties dated _12.25.2016_ ("Agreement").

Buyer(s) is/are purchasing the Property in "as is, where is," condition, without any warranties of any kind, including warranties of marketability, habitability, merchantability or fitness for a particular use. The Property will be conveyed by "SPECIAL WARRANTY" deed. No evidence of title, title insurance policy or abstract of title will be provided by the Seller.

Buyer(s) will HOLD HARMLESS Seller, the real estate companies and their respective agents as to the condition of the Property and its systems. Buyer(s) acknowledge(s) that he/she/they have thoroughly inspected and examined this Property and are not relying on any statements of the Seller or her representatives as to the condition of the Property including any latent defects. Seller has no obligation to make any repairs or renovations to the Property as a requirement of lender and/or the local building inspector or the failure of any system prior to closing. Buyer(s) is/are responsible for any and all costs associated with a required land and/or building inspection and/or dye test, for turning on and off utilities, and for paying the utility charges if required for any such inspection or dye test.

Buyer shall deposit _$5,000_ with the Seller as hand money, payable to "Natalie Lutz Cardiello, Trustee" at 107 Huron Drive, Carnegie, PA 15106. Except as set forth below, hand money is non-refundable and will be used by the Seller to pay for advertising and other costs associated with the sale of the Property. Hand money shall be returned to Buyer only in the event that a higher or better offer is made and the Property sold to someone other than Buyer for an amount which is greater than or equal to the purchase price set forth in this Agreement.

Buyer shall have seven (7) days from the date of this Agreement to perform any inspections or to complete any other due diligence he/she/they wish to perform in connection with the purchase of the Property during which period Buyer may request a refund of the hand money. Once the seven (7) day period has elapsed, the hand money is non-refundable, except as otherwise stated herein. It is understood that this entire Agreement is subject to approval by the United States Bankruptcy Court for the Western District of Pennsylvania. Any offer to purchase accepted by the Seller will only commit the Seller to file a motion with the Bankruptcy Court for approval of the sale to the prospective Buyer, at which time of hearing in open court the Bankruptcy Court will solicit high and/or better offers. However, should unforeseen circumstances arise and the Seller determines not to proceed with the sale, the Seller may withdraw such motion and return Buyer's hand money, if appropriate, in accordance with the preceding paragraph.

Closing shall occur on or before ten days from the date the Order of Sale becomes final and nonappealable, or at such other time as may be acceptable to the Seller's counsel, with all such payments to be via certified check, cashier's check, or such other forms of assured and guaranteed payment as may be acceptable to the Seller's counsel.

This agreement shall be construed under Pennsylvania law. Any disputes arising hereunder shall be settled by the United States Bankruptcy Court for the Western District of Pennsylvania.

The terms of this Addendum shall control and any language in the main body of the Agreement which is inconsistent or conflicts with the language of this Addendum shall be null and void.

| Witness | Date | Buyer | Date 12/26/2016 12:38 PM GMT |
|---|---|---|---|
| Witness | Date | Buyer | Date 12/26/2016 12:44 PM GMT |
| Witness | Date | Bankruptcy Trustee, Seller | Date 12/30/16 |